IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHARLES L. WALKER,

                        Plaintiff,

    v.

DANE COUNTY SHERIFF'S OFFICE,
WISCONSIN DEPARTMENT OF CHILDREN AND
FAMILIES, CHILD SUPPORT AGENCY,
COURT COMMISSIONER CLERK OFFICE,
JEFF OKAZAKI, STATE OF WISCONSIN,
ANDREA D. BRENDEMUEHL,
CHARLOTTE T., SERGEANT ALSAKER,
CINDY SCHALLER, RANDY BALLISLE,
DAVID HOPPERDIETZEL, HEIDI HILL,
DAVID THIEMKE, BRENT NORTON,
DEPUTY AVILA, and UNKNOWN OFFICERS,

                        Defendants.

OPINION and ORDER

25-cv-571-jdp

---

Plaintiff Charles Walker, proceeding without counsel, alleges that he was twice unlawfully arrested in conjunction with family-court proceedings, and after one of those arrests, deputies used excessive force against him, humiliated him during a strip search, and refused to give him his medications. The court has allowed Walker to proceed with the case without prepaying any portion of the filing fee. Dkt. 3.

The next step is for me to screen the complaint and dismiss any portion that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915. In doing so, I must accept the complaint's allegations as true and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I conclude that Walker's allegations

support some potential claims but that he fails to explain which defendants violated his rights regarding most of his allegations. I will give him a chance to file an amended complaint.

ALLEGATIONS OF FACT

In 2007, plaintiff Charles Walker was coerced into signing a child support agreement after being unlawfully arrested by City of Monona police officers. In 2020, Dane County Circuit Court Judge Jacob Frost found Walker in contempt of court (I take Walker to be saying that this occurred in a family-court case). Three years later Frost issued a warrant for Walker's arrest based on this contempt finding.

On January 10, 2025, Walker filed a motion in which he contended that a court cannot jail a parent for failure to pay child support without providing procedural safeguards ensuring consideration of the parent's ability to pay. Defendant Charlotte T., a clerk for a court commissioner, told a deputy that Walker had a warrant for his arrest. Walker left the courthouse and came back shortly thereafter. He was then arrested by Dane County deputies and taken to a courtroom, where the deputies slammed him into a wall and then onto a chair. Defendant Deputy Avila pulled down on his coat in a way that choked him, even after Walker stated that he couldn't breathe. I take Walker to be saying that defendant Heidi Hill was present for these events.

The deputies took Walker to the jail. At one point Walker tried to stand up to adjust the positioning of the extremely tight handcuffs that he was placed in; an officer "slammed [him] down and said that's how it's supposed to be done." Dkt. 1, at 5. He was later taken to a holding cell, where officers told him to place his leg a certain way. When Walker said that he couldn't move his leg that way, he was slammed onto a mat, and stripped naked while still

2

wearing handcuffs, with a female officer assisting and threatening to tase his "private area" if he didn't cooperate. *Id.* at 6. While in the jail, Walker was not given his medications for five days.

ANALYSIS

Walker sues a variety of entities and individuals connected with his family-court proceedings, his arrests, and his treatment by deputies following his second arrest. But he doesn't include any allegations plausibly suggesting that he has claims against the state, municipalities, or other governmental agencies: he can't sue the state directly and municipalities are liable for unconstitutional acts of its officers only if the constitutional violations resulted from a city policy, widespread practice, or decision by a city policymaker. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Walker also can't sue defendants regarding events that occurred in 2007. *See Reget v. City of La Crosse*, 595 F.3d 691, 694 (7th Cir. 2010) (six-year statute of limitations for constitutional claims like those brought by Walker); *Gleash v. Yuswak*, 308 F.3d 758, 760–61 (7th Cir. 2002) (district court may dismiss a complaint if party pleads enough information to show that complaint is untimely).

That leaves Walker's claims against individual defendants involved with his January 2025 arrest and treatment at the jail. Walker suggests that his arrest was unlawful, but he also alleges that it was performed pursuant to an arrest warrant issued by a judge. When a judge authorizes an arrest, "we presume [the] validity of the warrant and information offered to support it." *Dollard v. Whisenand*, 946 F.3d 342, 354 (7th Cir. 2019) (alteration in original). "That is, we presume probable cause." *Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022). The existence of probable cause for an arrest is an "absolute bar to a . . . claim for unlawful

3

arrest, false imprisonment, or malicious prosecution." *Hokamp v. Miller*, No. 21-cv-1125, 2023 WL 129793 at *7 (E.D. Wis. Jan. 9, 2023) (citing *Schertz v. Waupaca Cnty.*, 875 F.2d 578, 582 (7th Cir. 1989)). Therefore, Walker fails to state false arrest claims against defendants. The same problem dooms Walker's attempt at a retaliation claim against Charlotte T. for telling a deputy about Walker's warrant. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) (generally, plaintiff seeking retaliatory arrest claim must plead absence of probable cause).

Regardless the validity of the arrest, Walker alleges that Dane County deputies used excessive force against him by slamming him into objects and choking him with his coat. He also alleges that the deputies humiliated him with a strip search accompanied by threats of the use of a taser, and that jail staff refused to give him his medications for five days.

Under the Fourth Amendment, an officer's use of force is excessive if the officer uses greater force than was reasonably necessary. *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016); *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009). The standard is an objective one, viewed from the perspective of a reasonable officer in light of the totality of the circumstances known to the officer, without regard to the officer's intent or his subjective beliefs. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Williams v. Indiana State Police Dept.*, 797 F.3d 468, 472–73 (7th Cir. 2015). In assessing reasonableness, relevant factors include the seriousness and immediacy of any threat posed by the plaintiff and the extent of the plaintiff's resistance or interference with an officer's duties. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). Even if a defendant did not directly use excessive force, that defendant may be held liable for failing to stop another officer's use of force if the defendant knew that the other officer was using excessive force and had a realistic opportunity to stop it. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). A strip search of an arrestee violates the Fourth

Amendment if the search is unreasonable in light of the justification for the search and the scope, manner, and place of the search. *See Henry v. Hulett*, 969 F.3d 769, 784 (7th Cir. 2020). And jail staff violates a detainee's rights by providing medical care that is objectively unreasonable. *See Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020).

Walker's allegations regarding staff's excessive force, the strip search, and lack of medical care meet these standards. But although he names several deputies as defendants, he doesn't explain how most of them were involved in these events. The only wrongdoing he associates with specific defendants is defendant Avila choking him and defendant Hill being present for the excessive force. Without Walker identifying which defendants participated in each part of the events, I cannot consider claims against most of the deputy defendants.

I will give Walker a short time to submit an amended complaint fixing these problems. In drafting his amended complaint, Walker should be sure to:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally cause or participate in a violation of his rights.

- Identify all of the individuals that he wishes to sue in the caption of the complaint.

- Describe simply and concisely what actions he believes that each defendant took that violated his rights, using separate, numbered paragraphs. He should state his allegations as if he were telling a story to someone who knows nothing about the events.

- If he does not know the identity of particular defendants, he may label them as John Doe No. 1, John Doe No. 2, and so on. The court has procedures by which he may make discovery requests to identify those defendants later in the case.

If Walker doesn't submit an amended complaint by the deadline set below, I will allow him to proceed on claims only against Avila and Hill.

ORDER

IT IS ORDERED that:

1. Plaintiff Charles Walker may have until August 21, 2025, to submit an amended complaint.

2. The clerk of court is directed to send plaintiff a copy of the court's non-prisoner complaint form.

Entered July 30, 2025.

                                        BY THE COURT:

                                        /s/

                                        _____
                                        JAMES D. PETERSON
                                        District Judge